Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| DISTRIBUTION CONTROL SYSTEMS CARIBE, INC.<br><br>Recurrente<br><br>Vs.<br><br>JUNTA REVISORA DE SUBASTAS DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO<br><br>JUNTA REVISORA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES<br><br>Recurrida | TA2025RA00323 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta Revisora de Subastas de la Administración de Servicios Generales<br><br>Caso Núm. JR-25-140<br><br>Sobre: "WATER METERS AND ADVANCED METERING INFRASTRUCTURE"<br><br>SOLICITUD DE PROPUESTA NÚM. RFP-22-RFP-003 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de febrero de 2026.

Comparece ante nos el recurrente, Distribution Control Systems Caribe, Inc. (en adelante, recurrente o DCSCI) para que dejemos sin efecto la determinación emitida por la Junta Revisora de Subastas (en adelante, Junta Revisora), el 7 de octubre de 2025. Mediante esta, confirmó a la Junta de Subastas de la Autoridad de Acueductos y Alcantarillados de Puerto Rico (en adelante, AAA), quien le adjudicó la *buena pro* de la Solicitud de Propuestas Núm. 22-RFP-003 a Utility Metering Solutions (en adelante, UMS).

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* recurrida.

**-I-**

Por estar relacionados entre sí, hacemos referencia a los hechos esbozados en la *Sentencia* emitida el 4 de abril de 2025 por un Panel Hermano, en el caso núm. KLRA202500122. A continuación, resumimos los hechos pertinentes que surge del expediente ante nuestra consideración para la disposición del presente recurso.

El 4 de enero de 2022 la AAA publicó, mediante aviso público la *Solicitud de Propuestas* (en adelante, RFP, por sus siglas en inglés), núm. 22-RFP-003, titulada *Water Meters and Advanced Metering Infrastructure* (en adelante, AMI). El propósito de esta era adquirir contadores (metros de agua), infraestructura para la lectura remota, y proveer un piloto de la tecnología.[1] Surge del RFP que el proyecto se dividiría en dos (2) etapas: una Fase Piloto, la cual tendría una duración de diez (10) meses, y una Fase de Implementación. Para formar parte de la Fase Piloto, la Sección 6.1 del RFP esbozó los criterios que serían evaluados de los proponentes. Igualmente, se indicó que, durante esta fase, los seleccionados serían evaluados bajo los criterios detallados en la Sección 3.13 del documento. Luego evaluar las cinco (5) propuestas presentadas, el 9 de junio de 2023, la AAA adjudicó la Fase Piloto a DCSCI y UMS.[2] Surge del expediente que la Fase Piloto culminó el 30 de junio de 2024, y que los proponentes fueron evaluados por el consultor contratado por la AAA, Arcadis Caribe, LLC (en adelante, Arcadis).[3]

Posteriormente, el 18 de julio de 2024, Arcadis presentó su memorando técnico, titulado *PRASA Pilot Evaluation Memo,[4]* que, a su vez, fue acogido por el Comité Evaluador de la AAA, el 13 de

---

[1] Apéndice del recurso, Entrada Núm. 1, Anejo 3.
[2] *Íd.*, Entrada Núm. 1, Anejo 5.
[3] *Íd.*, Entrada Núm. 1, Anejo 11.
[4] Expediente Administrativo, págs. 3845-3912.

agosto de 2024, en su *Informe del Comité Evaluador.*[5] Ambos informes consignaron que, durante la Fase Piloto, el equipo sometido por DCSCI experimentó fallas en la transmisión de información, toda vez que la caja del contador se inundó. Señalaron que, aunque el recurrente propuso una solución a largo plazo, esta se encontraba aún en etapa de desarrollo y, por ende, no había sido objeto de prueba. Por tal razón, concluyeron que tal propuesta no constituía una alternativa viable para avanzar a la Fase de Implementación a nivel Isla, pues la falla en la transmisión de datos ante la inundación del equipo sería recurrente dadas las condiciones atmosféricas y la infraestructura de las cajas de contador existentes en Puerto Rico.

En contraste, se destacó que, si bien la propuesta de UMS implicaba una inversión mayor, su desempeño en la Fase Piloto fue superior. En particular, el equipo de UMS alcanzó una cobertura del noventa y tres por ciento (93%) a nivel Isla, y se anticipó que la AAA se beneficiaría aún más a medida que la red celular continuara expandiéndose en Puerto Rico. Se indicó, además, que la única deficiencia observada en el equipo de UMS estuvo relacionada con las tapas de los contadores, ya que fue necesario modificar las existentes para realizar las pruebas. Por ello, se enfatizó que, en la Fase de Implementación, UMS tendría que ajustarse a las especificaciones y costos de las tapas establecidos en el contrato. A la luz de lo anterior, ambos recomendaron proceder a la Fase de Implementación con UMS, concluyendo que dicha alternativa respondía mejor a los intereses de la AAA.

Tras varios asuntos procesales, el 30 de julio de 2025, la Junta de Subastas de la AAA emitió una *Carta de Adjudicación.*[6] Mediante esta, acogió la recomendación del informe de Arcadis y le

---

[5] Apéndice del recurso, Entrada Núm. 1, Anejo 17.
[6] *Íd.*, Entrada Núm. 1, Anejo 11.

adjudicó la propuesta a UMS. En la misma, especificó que UMS obtuvo una puntuación de ochenta y dos punto cinco por ciento (82.5%) de cumplimiento, para un costo de cuatrocientos siete millones novecientos treinta mil seiscientos cuarenta y seis dólares ($407,930,646.00) por el término de cinco (5) años. En contraste, DCSCI obtuvo una puntuación de setenta y cuatro punto ocho por ciento (74.8%) con un costo estimado de trescientos cuarenta y siete millones quinientos veintidós mil trescientos cincuenta y tres dólares ($347,522,353) por cinco (5) años.

Insatisfecho con la determinación, el 11 de agosto de 2025, el recurrente presentó una *Solicitud de Revisión Administrativa* ante la Junta Revisora.[7] En esencia, DCSCI alegó que la decisión de la Junta de Subastas de la AAA no se fundamentó en el informe preparado por Arcadis y que, además, otorgó un trato preferencial injustificado a UMS. Sostuvo que, al adjudicar el proyecto, la Junta de Subastas enfatizó indebidamente las fallas experimentadas por el equipo de DCSCI. A juicio del recurrente, dicha falla no fue significativa, e insistió en que presentó alternativas a corto y largo plazo para corregirla. Del mismo modo, argumentó que UMS también enfrentó problemas con las tapas de sus sistemas, pero que la Junta de Subasta de la AAA no le atribuyó el mismo peso. Además, añadió que, conforme a una comunicación que la Junta de Control Fiscal le suscribió a la Gobernadora, la evaluación del proyecto debió realizarse tomando como referencia un costo de vida útil de quince (15) años, en lugar de cinco (5). Finalmente, planteó que el procedimiento objeto de controversia debió tramitarse mediante una subasta formal y no a través de un proceso de RFP.

Más adelante, el 12 de septiembre de 2025 la AAA presentó su *Oposición a Solicitud de Revisión Administrativa.*[8] En síntesis,

---

[7] *Íd.*, Entrada Núm. 1.
[8] *Íd.*, Entrada Núm. 7.

alegó que la adjudicación fue hecha conforme al derecho aplicable. Argumentó que el expediente administrativo evidenciaba que la propuesta de DCSCI presentó deficiencias en la lectura y transmisión del consumo de agua durante la Fase Piloto, un elemento esencial del RFP, y que las mismas respondieron a factores ambientales. Señaló que, aunque DCSIS propuso alternativas a corto y largo plazo para atender dichas fallas, estas eran de carácter experimental y temporero, lo que generaba un riesgo significativo para su implantación a nivel Isla.

Por otro lado, la AAA explicó que, si bien UMS enfrentó problemas menores relacionados con las tapas de los contadores, este ofreció soluciones viables que no comprometían la funcionalidad del sistema. Añadió que el equipo de UMS no presentó deficiencias en la lectura del consumo de agua. Asimismo, afirmó que la adjudicación a favor de UMS se basó en el análisis del informe técnico preparado por Arcadis. En cuanto al alegado comunicado de la Junta de Control Fiscal, señaló que este no sugería irregularidad alguna en el proceso de subasta ni requería ajustes a las proyecciones financieras sometidas por la AAA. Finalmente, defendió la utilización del mecanismo de RFP, indicando que, DCSCI participó del proceso voluntariamente, y que el Tribunal Supremo ha validado su empleo para la adquisición de proyectos de alta complejidad técnica.

El mismo día, UMS presentó su *Oposición a Solicitud de Revisión Administrativa.*[9] En su escrito, alegó que la AAA actuó dentro de su discreción al optar por el mecanismo de RFP como método de licitación. Sostuvo, además, que desde el inicio el RFP delineó con claridad los criterios aplicables que serían evaluados durante el proceso. Específicamente, sostuvo que la Sección 6.1 del

---

[9] *Íd.*, Entrada Núm. 6.

RFP definió los requisitos para ser considerados para formar parte de la Fase Piloto, y que la Sección 3.13 detalló los criterios que serían objeto de evaluación durante dicha fase. Asimismo, sostuvo que los señalamientos de DCSCI consistían en especulaciones, carentes de pertinencia jurídica. Arguyó también que la *Carta de Adjudicación* emitida por la Junta de Subasta de la AAA cumplió con el derecho aplicable, al igual que fue producto de un análisis integral que consideró la calidad del equipo, el desempeño de la red de comunicaciones y la viabilidad de implementación. En cuanto al planteamiento relacionado con el comunicado de la Junta de Control Fiscal, sostuvo que dicho documento no formó parte del expediente administrativo y que la evidencia más confiable sobre el desempeño de los licitadores se encontraba en el Informe preparado por Arcadis.

Así las cosas, el 7 de octubre de 2025, la Junta Revisora emitió la *Resolución* recurrida.[10] En la misma, la Junta Revisora concluyó que la decisión de la Junta de Subasta de la AAA se basó, tanto en el desempeño de DCSCI durante la Fase Piloto, como en el expediente administrativo y en las recomendaciones contenidas en el informe de Arcadis. Razonó que, conforme al referido informe, aunque ambas partes enfrentaron dificultades en dicha fase, la solución presentada por UMS representó el mejor valor y resultó la alternativa más conveniente para el Gobierno de Puerto Rico. En consecuencia, entendió que la Junta de Subasta de la AAA no incurrió en error al acoger las recomendaciones de Arcadis y adjudicarle la *buena pro* a UMS.

En cuanto al planteamiento de que la AAA no consideró la comunicación de la Junta de Control Fiscal, la Junta Revisora determinó que estaba impedida de evaluar documentos que no formaron parte del expediente administrativo. Asimismo, respecto al

---

[10] *Íd.*, Entrada Núm. 2.

uso del RFP como mecanismo de licitación, concluyó que la AAA estaba facultada para utilizarlo, conforme a la *Ley de la Administración de Servicios Generales para la Centralización de las Compras en el Gobierno de Puerto Rico de 2019*, Ley Núm. 73-2019, 3 LPRA sec. 9831 *et seq.*, al igual que la jurisprudencia aplicable. Finalmente, destacó que el RFP fue claro y específico en cuanto a los criterios que habrían de evaluarse en cada fase del proceso.

Inconforme, el 27 de octubre de 2025, DCSCI presentó su *Recurso de Revisión Judicial* ante nos. Mediante este, señala la comisión de los siguientes errores:

> Erró la Junta Revisora de Subastas cuando, contrario al debido proceso de ley, confirmó la adjudicación de la Junta de Subastas de la AAA utilizando varas distintas para medir a DCSCI vis a vis UMS, permitiendo así que el proyecto se le adjudique al postor que representa un costo sustancialmente más alto para el fisco.
>
> Erró la Junta Revisora de Subastas cuando, para confirmar la actuación errónea de la Junta de Subastas de la AAA de utilizar un costo de vida de 5 y no de 15 años, contrario al récord administrativo:(a) concluyó que no podía tomar en consideración comunicaciones emitidas por la Junta de Control Fiscal, ello a pesar de que podía (y debía) tomar conocimiento oficial de las mismas; y (b) descansó en un asunto completamente impertinente relacionado con la duración del proyecto piloto.
>
> Erró la Junta Revisora de Subastas cuando, para confirmar la actuación errónea de la Junta de Subastas de la AAA de utilizar un RFP en vez de una subasta formal; (a) concluyó erróneamente que el reglamento de la AAA es inaplicable a la situación de autos; y (b) resolvió, en la alternativa, que el proyecto que nos ocupa cae dentro de las excepciones de ese reglamento.

Por su parte, el 1 de diciembre de 2025, la AAA presentó su *Alegato en Oposición a Recurso de Revisión Judicial.* El mismo día, UMS presentó su *Oposición al Recurso de Revisión Administrativa.* De este modo, con el beneficio de la comparecencia de las partes, así como del contenido del expediente administrativo y el derecho aplicable, procedemos a expresarnos.

***-II-***

***-A-***

En nuestro ordenamiento jurídico, los tribunales apelativos están llamados a abstenerse de intervenir con las decisiones emitidas por las agencias administrativas, todo en deferencia a la vasta experiencia y conocimiento especializado que les han sido encomendados. *Jusino Rodríguez v. Junta de Retiro,* 2024 TSPR 138, 215 DPR ___ (2024); *Otero Rivera v. USAA Fed. Savs. Bank, Inc.,* 214 DPR 473, 484 (2024); *Voili Voilá Corp. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821-822 (2012).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. ARPe.,* 152 DPR 116, 122 (2000). Esto significa que, el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que, impida la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), el Tribunal Supremo de

Puerto Rico se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

Por ende, como norma general, el tribunal revisor debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que, la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de PR*, *supra*, a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Íd.*

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R. v. J.P., supra*, pág. 131. Además, reiteró:

Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración.

Por tal razón, es la parte que impugna la decisión administrativa quien tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra*, pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

**-B-**

La contratación gubernamental de todo tipo de servicios está revestida del más alto interés público, pues persigue fomentar la

inversión adecuada, responsable y eficiente de los recursos del Estado. *St. James Sec. v. AEE*, 213 DPR 366, 377 (2023); *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 794 (2023); *Super Asphalt v. AFI y otro*, supra, pág. 820; *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018). El gobierno utiliza los procedimientos de subasta o el requerimiento de propuestas como vehículos procesales para la adquisición de bienes y servicios. *Mun. Aguada v. W Const. y Recovery Finance*, 214 DPR 432, 453 (2024); *St. James Sec. v. AEE*, supra, pág. 377; *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019). Por medio de estos, se pretende conseguir los precios más económicos, evitar el favoritismo, la corrupción, el despilfarro, la malversación, la extravagancia y el descuido al otorgarse contratos, así como minimizar los riesgos de incumplimiento. *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009).

El proceso de subasta tradicional consta de varias etapas y no admite negociación alguna entre la agencia y el licitador luego de sometida la propuesta. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 454. Por el contrario, el mecanismo de requerimiento de propuestas constituye un procedimiento informal y flexible, que permite al proponente negociar con el gobierno y enmendar o revisar su oferta antes de la adjudicación. *St. James Sec. v. AEE*, supra, págs. 377-378; *PR Eco Park et al. v. Mun. de Yauco*, supra, págs. 531-532; *R & B Power v. E.L.A.*, 170 DPR 606, 621 (2007). En ese sentido, le confiere a la entidad pública un mayor grado de discreción al considerar una propuesta. *R & B Power v. E.L.A.*, *supra*, pág. 623. Además, su uso es común cuando el bien o servicio que interesa adquirir el ente gubernamental involucran aspectos altamente complejos o cuando existen escasos competidores calificados. *St. James Sec. v. AEE, supra*, pág. 378; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 532; *R & B Power v. E.L.A.*, supra, págs. 621-622.

Cabe señalar que, aun cuando se trata de procesos distintos, la subasta tradicional y el requerimiento de propuestas no son del todo incompatibles. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 455; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 532; *Caribbean Communications v. Pol. de P.R.*, supra, pág. 998. Ambos gozan de características adjudicativas y ninguno está exento del derecho de revisión judicial. *R & B Power v. E.L.A.*, supra, pág. 624. De igual forma, ambos "buscan proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles". *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633, 649 (2024), citando a *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019).

Las entidades gubernamentales gozan de amplia discreción al momento de considerar, rechazar y adjudicar las subastas a favor de la propuesta que mejor responde a las necesidades del gobierno y al interés del pueblo en general. *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 349 (2016). En ese sentido, "la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no solo en criterios estrictamente matemáticos, sino en una valoración de la tecnología y los recursos humanos con que cuenta, a la luz de las necesidades presentes y futuras de la agencia". *A.E.E. v. Maxon*, 163 DPR 434, 439 (2004).

En atención a ello, los tribunales no debemos sustituir el criterio de la agencia concernida, a menos que se demuestre que la decisión adolece de abuso de discreción, arbitrariedad o irracionalidad. Véase, *Mun. Aguada v. W Const. y Recovery Finance*, supra, págs. 455-456; *CD Builders v. Mun. Las Piedras*, supra, pág. 349; *St. James Sec. v. AEE*, supra, pág. 378.

***-III-***

En el presente caso, el recurrente sostuvo que la Junta de Subastas de la AAA evaluó a DCSCI y a UMS bajo criterios distintos, así como que debió seleccionar al recurrente por este ser el postor más bajo. Además, arguyó que se debió tomar en consideración una comunicación emitida por la Junta de Control Fiscal hacia la Gobernadora, previo a tomar la decisión final. Igualmente, alegó que la Junta de Subastas de la AAA incidió al utilizar el método de solicitud de propuestas, y no una subasta formal. Tras evaluar el expediente administrativo en autos, así como los planteamientos de las partes, *confirmamos* la *Resolución* recurrida.

En su *primer señalamiento de error*, el recurrente alegó que la Junta de Subastas de la AAA evaluó a los proponentes, UMS y DCSCI, conforme a criterios distintos, en contravención a lo dispuesto en el RFP. En específico, sostuvo que ambos proponentes debían ser evaluados en la Fase Piloto exclusivamente bajo los criterios establecidos en la Sección 6.1 del RFP, por lo que alegó que la Junta de Subastas de la AAA se apartó indebidamente de dichos parámetros al adjudicar el contrato. Sin embargo, un examen detenido del RFP desmiente tal planteamiento. Si bien la Sección 6.1 identifica los criterios aplicables a la Fase Piloto, surge con meridiana claridad de la Sección 3.13 que los proponentes que superaran dicha fase serían evaluados conforme a los criterios allí dispuestos con miras a la selección del postor ganador. Por consiguiente, concluimos que no le asiste razón al recurrente.

De igual forma, el recurrente argumentó que la determinación de la Junta de Subastas de la AAA era contraria a las recomendaciones contenidas en el Informe preparado por Arcadis. No obstante, el expediente administrativo que obra ante nos refleja precisamente lo contrario. Dicho informe recomendó la adjudicación

del RFP a favor de UMS.[11] En específico, Arcadis concluyó que, aunque DCSCI presentó alternativas para atender las fallas experimentadas por su equipo durante la Fase Piloto, tales propuestas no constituían una solución viable para una implementación a nivel Isla. Por tal razón, el Comité Evaluador de la AAA señaló que, aun cuando la propuesta de UMS implicaba una inversión mayor, dicho costo se encontraba debidamente justificado por los beneficios asociados a la mayor confiabilidad del sistema, así como por la facilidad de implementación y mantenimiento del proyecto.

El expediente también revela que, durante la Fase Piloto, el equipo de DCSCI presentó fallas operacionales atribuibles a las condiciones ambientales bajo las cuales fue probado, lo cual afectaba directamente el objetivo medular del proyecto: la transmisión remota de la información de los contadores. Por su parte, aunque el equipo de UMS presentó inconvenientes relacionados con las tapas de los contadores, tales situaciones no incidieron sobre la transmisión de los datos que constituían el eje de la evaluación.

Tal como esbozamos en el resumen doctrinal, una vez adjudicada la *buena pro* de un requerimiento de propuestas, los tribunales deben abstenerse de sustituir el criterio técnico y especializado de la agencia o junta adjudicadora, salvo que se demuestre que la determinación impugnada fue producto de arbitrariedad, capricho, fraude o mala fe. En ausencia de ilegalidad, irregularidades o evidencia de infracción a disposiciones estatutarias, corresponde otorgar deferencia a la actuación administrativa. Asimismo, hemos sostenido que los tribunales no deben intervenir con el rechazo o la adjudicación de una propuesta

---

[11] *Vease*, Expediente Administrativo, pág. 3888.

salvo que medie abuso de discreción, arbitrariedad o irracionabilidad. Nada de ello se desprende del expediente ante nuestra consideración. En consecuencia, estamos impedidos de intervenir con la adjudicación realizada por la AAA.

Finalmente, el recurrente sostuvo que la Junta de Subastas erró al no adjudicar el proyecto al proponente con el costo más bajo. Tampoco en este extremo le asiste la razón. Nuestro Tribunal Supremo ha reconocido que las determinaciones de las agencias no deben descansar exclusivamente en un análisis matemático del precio, sino que deben considerar otros factores pertinentes a las necesidades operacionales y técnicas de la agencia. Así, aunque la propuesta de UMS resultó ser más costosa que la de DCSCI, lo cierto es que, tras ponderar los distintos elementos que incidían sobre el desempeño y la viabilidad del proyecto, la AAA concluyó razonadamente que UMS representaba la alternativa más adecuada a sus intereses. A diferencia de DCSCI, el proyecto de UMS no presentó fallas que comprometieran el funcionamiento esencial del sistema. Las soluciones propuestas por el recurrente, aunque atendían parcialmente los problemas identificados, no ofrecían una garantía razonable de desempeño futuro ante condiciones ambientales adversas, particularmente cuando tales condiciones son recurrentes en Puerto Rico.

En cuanto a su *segundo señalamiento de error,* el recurrente sostuvo que la Junta Revisora erró al no considerar una comunicación emitida por la Junta de Control Fiscal a la Gobernadora relacionada con el proyecto objeto de controversia. Sin embargo, es norma firmemente establecida que las determinaciones de las agencias deben estar sustentadas en el expediente administrativo. Siendo así, no surge que la comunicación de la Junta de Control Fiscal formara parte del expediente del presente caso. De igual forma, emana del caso ante nos que la decisión de la

Junta Revisora estuvo fundamentada en la prueba que consta en el expediente administrativo, y no refleja indicios de abuso de discreción. Por tanto, justipreciamos que el error señalado por el recurrente no se configuró.

En su *tercer señalamiento de error*, el recurrente sostuvo que la Junta de Subastas de la AAA erró al tramitar la contratación mediante un requerimiento de propuestas, en lugar de celebrar una subasta formal. No obstante, tal planteamiento no encuentra apoyo en el derecho aplicable. Conforme al marco doctrinal que rige la contratación pública, nuestro ordenamiento jurídico propicia el uso del requerimiento de propuestas en aquellos escenarios que involucran servicios de alta complejidad técnica o áreas en las que existe un número limitado de competidores debidamente cualificados. A la luz de lo anterior, resulta patente que la Junta de Subastas de la AAA actuó dentro del margen de discreción que le confiere la ley al optar por un RFP para la adquisición de los servicios en controversia. La naturaleza especializada del proyecto justificaba razonablemente la utilización de este procedimiento, por lo que no se desprende del expediente indicio alguno de ilegalidad, arbitrariedad o abuso de discreción en la actuación administrativa impugnada.

A la luz de los hechos expuestos y del trámite seguido por la AAA, resulta incuestionable que el señalamiento de error formulado por el recurrente carece de base fáctica y jurídica. El RFP 22-RFP-003 estableció de forma clara y anticipada la estructura bifásica del proyecto, los criterios aplicables para la Fase Piloto y el mecanismo de evaluación posterior conforme a las Secciones 6.1 y 3.13, respectivamente, reglas que fueron conocidas y aceptadas por todos los proponentes. La adjudicación de la Fase Piloto a DCSCI y UMS, realizada el 9 de junio de 2023, respondió a una evaluación conforme a esos parámetros, y la valoración del desempeño durante

dicha fase fue llevada a cabo por un consultor independiente, Arcadis Caribe, LLC, tras la culminación del piloto el 30 de junio de 2024. Pretender ahora impugnar el proceso equivale a desconocer un esquema evaluativo previamente definido, ejecutado conforme al RFP y sustentado en un análisis técnico objetivo. En consecuencia, el alegado error no solo es infundado, sino que constituye un intento ex post facto de reabrir un proceso que se condujo de manera ordenada, transparente y conforme a las reglas que regían a todas las partes por igual.

De este modo, y tras ponderar los planteamientos de las partes, así como el derecho aplicable y el expediente administrativo en autos, concluimos que no se cometieron los errores señalados por el recurrente. En consecuencia, no encontramos base jurídica que nos permita intervenir con la *Resolución* recurrida, por lo que *confirmamos* la misma.

### -*IV*-

Por los fundamentos antes esbozados, y que se hacen formar parte de este dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones